## Worden Estate

*George W. McKeag,* for accountants.
*George O. Philips,* for former partner.

TAXIS, *P. J.,* January 26, 1976—The first account of The Fidelity Bank and Annette F. Worden, who died February 3, 1975, trustees for residuary trust, as stated from July 7, 1973, to September 4, 1975, by The Fidelity Bank, surviving trustee, and

The Fidelity Bank and Geoffrey F. Worden, executors of the Will of Annette F. Worden, deceased, was examined and audited by the court on December 1, 1975.

The reason for the filing of the present account is the death of Annette F. Worden, life tenant and cotrustee, on February 3, 1975. As a consequence of her death, this trust terminates.

The account shows a balance of principal and income of $107,646.30, composed of the securities set forth on page 2 of the account, and cash.

The transfer inheritance tax assessed has been paid.

All parties having, or claiming, any interest in the trust, of whom the accountants have notice or knowledge, are stated to have received written notice of the audit in conformity with the rules of court.

At the time of audit, Clifford W. Risberg filed objections to the proposed distribution asking that the corpus of this trust be retained by the trustees for reasons hereinafter set forth. Mr. Risberg has no objection to the account as stated but does ask that distribution be delayed until December 6, 1976.

The facts in the case are not in dispute and since both counsel agree that the accountants' memorandum of law accurately sets forth the operative facts and spells out the problem, the court quotes extensively from that memorandum, as follows:

"The decedent, Robert E. Worden, died on December 5, 1970. The account of the Executors was audited and confirmed by Adjudication of this court filed September 11, 1973.

"All claims against the estate, not admitted, were barred by the adjudication, pursuant to Section 3386 of the Probate, Estates and Fiduciaries Code.

The only possible claims preserved against the decedent's estate were those claimants specifically referred to in a Stipulation filed with the Petition for Distribution on the Executor's Account. A copy is filed with the Trustees Petition now before the Court.

"The alleged claim of Clifford D. Risberg is . . . the only claim, if it is a claim at all, preserved by the said Stipulation. The basis of Mr. Risberg's alleged claim is as follows:

"The decedent and Clifford W. Risberg were copartners trading as Worden and Risberg. No written partnership agreement existed between them. The partnership was dissolved by the death on December 5, 1970 of Robert E. Worden.

"To provide a fund from which the decedent's share of liability for unliquidated partnership obligations could be paid, by agreement between Mr. Risberg as surviving partner and the Executors of the decedent's estate, the decedent's ½ share of the partnership assets was set aside under an Escrow agreement. A copy of the Escrow agreement has been filed with the Trustee's petition for distribution. Approximately $42,000 remains in escrow under said agreement, and, after payment of all known claims from it, there should remain a balance of about $32,000.

"The Escrow agreement provides that the balance held under it may be distributed to the decedent's estate either upon delivery of a certificate approving such distribution signed by Mr. Risberg, or on December 6, 1976, whichever first occurs. The reason for the latter date is that the six year statute of limitations will have run on said date as to contractual obligations.

"Mr. Risberg objects to distributions of not only the balance of the Escrow fund—which he has a

right to do, because the Escrow agreement provides for the events of distribution—but also the entire remaining balances presently distributable to the decedent's children under his Will.

"It is admitted that Mr. Risberg has no present claim against the estate. This controversy exists solely because Mr. Risberg claims that before the expiration of the statute of limitations (before December 6, 1976, six years from the date of death of the decedent and the date of the dissolution of the partnership) some unknown person may present an unknown claim against Mr. Risberg for a partnership obligation. If Mr. Risberg is forced to pay such fictitious claim, he wishes to have recourse against the Worden Estate for reimbursement for the decedent's proportionate (one-half) part of the supposed partnership obligation."

A claim could be barred against the estate of the deceased partner; yet, against the surviving partner, the same claim could be made until barred by the statute of limitations. Conceivably, a claim made too late against the deceased partner's estate but timely as to the surviving partner, could exceed the funds available in the escrow accounts. The surviving partner could then find himself obliged to pay the claim in full and to use his personal funds over and above the escrow fund. He, then, would likewise be too late to obtain equitable contribution of one half the joint and several obligation from his deceased partner's estate.

To cover such a contingency, the agreement provided that decedent's executors indemnify the surviving partner to the extent of one half any escrow-fund deficiency; and, in order to assure the availability of funds for that, to withhold from final distribution of the assets of decedent's estate a suffi-

cient amount. Decedent's will gave his residuary estate in trust for his wife, for life, with remainder on her death to their children, if over age 25. The petition for adjudication recites that the September 4, 1975, accounting value of decedent's partnership interest is $42,979.42.

The death of decedent's widow, and life beneficiary on February 3, 1975, terminated the trust of which she was a co-trustee, and, coming while the statute of limitations for the claims of partnership creditors against the surviving partner had not yet run its course, gives rise to the question to be decided. Four children, all past age 25, are living and but for the partnership problem would be entitled to award and distribution of one fourth the remainder, each. The surviving trustee and the executors of the widow, who joined in the account, request such awards. Decedent's surviving partner objects unless the awards are conditioned on the distributees giving their funding bond with corporate surety to cover any deficiency of the escrow funds to meet claims of partnership creditors.

At the audit, counsel for accountants submitted a different request from that in the petition for adjudication. Namely, to award back to accountants decedent's interest in the partnership presently held in escrow, in accordance with the agreement of March 15, 1971. The other principal assets would be presently distributed to the remaindermen. The surviving partner is not content with that concession from accountants' previous position. He is apprehensive, as he was originally, that some still dormant and unknown claimant may come to life before the statute runs as to him and to satisfy whom, along with the known claimants, the escrow fund is insufficient. The proposal to make a present

award conditioned upon a refunding bond is rejected as imposing an undue expense on the remaindermen.

Not until the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.101, et seq. were there in Pennsylvania any statutory provisions on contingent claims against decedents' estates. The few court decisions on the subject left the solution of the problem unclear. One policy favored the prompt administration and distribution of decedents' estates. Opposed to that were considerations of treating contingent claimants equitably. Section 618 of the 1949 Act, supra, 20 PS §320.618 offered three alternatives for handling claims which may, or may not, become due in the future. This provision has been carried into the Probate, Estates and Fiduciaries Code of June 30, 1972, P. L. 508 as section 3388, 20 Pa. C.S. §3388.

The only difference between the situation as it was directly after decedent's death and as it is now, is that the trust was then beginning and now has terminated. While the trust continued, the non-partnership assets remained available, in the possession of the trustees, subject to the escrow agreement and the stipulation. Had the trust continued until December 5, 1976, the remaindermen would have had no choice but to remain patient and abide their mother's death before coming into possession and enjoyment of their interests.

The surviving partner has been vigilant to protect his position in every possible way and at every opportunity from decedent's death until the present. There is nothing he could have done at any time before, or can do now, to protect himself against a claim of a partnership creditor. As between himself and such a creditor, his liability is for the full amount of the claim. If a partner's liability to a

partnership creditor were for only his pro rata share, there would be no need for any rights of contribution from other partners.

The escrow agreement and the stipulation are conclusive evidence that all parties recognized the surviving partner's predicament and deemed it equitable to protect him from any consequences he did not deserve and was otherwise helpless to guard against. Should the fortuity of termination of the trust by the widow's death before the statute of limitations has run its course render for naught all that went before? We think not. What was equitable in 1971 is no less so today.

And now, January 28, 1976, the account is confirmed. Income is awarded as requested in the petition for adjudication. The objections of Clifford W. Risberg to the award of principal are sustained and the entire balance of principal is awarded back to The Fidelity Bank, remaining trustee, subject to the escrow agreement dated March 15, 1971, and the stipulation dated August 22, 1973, for further accounting after December 5, 1976.